**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

LAWRENCE DALE FOSTER,

    *Plaintiff*,

v.

RODGER WILLIAMS,
Chief West Branch City Police
Department,

    *Defendant*.
_____/

CASE NO. 10-CV-12616

DISTRICT JUDGE THOMAS LUDINGTON
MAGISTRATE JUDGE CHARLES BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
(Doc. 12)

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion for summary judgment be **GRANTED** and that the case be dismissed in its entirety.

### II.    REPORT

    **A.    Introduction**

Plaintiff filed the instant *pro se* civil rights complaint under 42 U.S.C. § 1983 on July 1, 2010. (Doc.1.) On July 9, 2010, United States District Judge Thomas L. Ludington referred the case for general case management to the undersigned magistrate judge. (Doc. 4.)

On November 15, 2010, Defendant filed a motion for summary judgment, which is currently before the Court. (Doc. 12.) Plaintiff responded on December 7, 2010 (Doc. 14), and filed a "letter of reference." (Doc. 15.) Defendant replied on December 27, 2010. (Doc. 17.)

Plaintiff filed a "reply" brief in response to Defendant's reply on January 12, 2011 (Doc. 18), and Defendant filed a reply to Plaintiff's "reply" on January 19, 2011. (Doc. 19.) Defendant's motion addresses the three potential claims alleged in the complaint: false arrest under 42 U.S.C. § 1983, false arrest under state law, and defamation under state law. (Doc. 12.) Upon review of the documents, I conclude that, pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation.

**B.     Background**

In his complaint, Plaintiff alleges that

> Chief Rodger Williams, falsely arrested me, and attempted to have me sent to prison on charges that were based on falsified documentation, and deflemated my character in front of the Ogemaw Judicial System . . . in an attempt to incarcerate me for twenty five years . . . based on a police/witness statement (report) that was said to have been the true testimony of my mother Beverly Ann Foster [but] my mother testified to the fact that it was a falsified document/police statement, in front of Chief Rodger Williams, and Cheif Prosecuting Attorney LaDonna A. Schultz . . . [and] [t]he case was then dismissed . . . .

(Doc. 1 at 1-2.)[1] The allegation stems from Plaintiff's arrest on May 13, 2008, for failure to comply with the Sex Offender Registration Act's ("SORA") requirement that notice be given of an individual's new residence within ten days after the individual changes or vacates his or her residence. Mich. Comp. Laws § 28.725. (Doc. 12 at Ex. E.) The criminal complaint was based on the fact that Plaintiff's registered address was his mother's address, i.e., 361 Michelson Rd., Houghton Lake, Michigan, but there had been a witness report that Plaintiff was living at his girlfriend's house at 343 S. 3rd Street, West Branch, Michigan. (Doc. 12 at Ex. E.) A criminal complaint was filed on May 13, 2008, charging Plaintiff with failure to comply with SORA and

---

[1] The errors in the quotation appear in the original text. Since the use of "[sic]" would be repetitive, its use is avoided.

notifying him that he was a Fourth Habitual Offender (Doc. 12 at Ex. D), but the criminal case was dismissed on July 8, 2008. (Doc. 14 at 32.)

The confusion apparently stemmed from varying descriptions of where Plaintiff resided. In his response to Defendant's motion for summary judgment, Plaintiff explained:

> I had lived at 343 3rd St for 8 years, and then in April 2007 my father fall ill, May 27th, 2007 my father passed away, in Sept 2007 I moved to Houghton Lk to help take care of and help my mother. Oct 2007 I got my own place at Trevelo Tr in Houghton Lk. April 30th 2008 I again went back to my mother's to help her again at 361 Michelson Rd Houghton Lk. May 7th 2008, I changed my address at the Secretary of States office. I still visited my girlfriend/feance at 343 S. 3rd St in West Branch and helped her around he yard and stuff too. I have been with her for 18 years. But I did "NOT" live at the 343 S. Third St address at the time they arrested me and said I did.

(Doc. 14 at 4.) Plaintiff attached to his response a printout from the Michigan State Police's online sex offender registry showing that on July 24, 2008, his primary address was listed as 361 Michelson Rd, Houghton Lake, Michigan, and his secondary address (listed twice) was 343 S. 3rd Street, West Branch, Michigan. (Doc. 14 at 26.)

Defendant has attached to his motion for summary judgment a copy of the Certified Record of the State of Michigan Sex Offender Registration showing the following addresses for Plaintiff:

| | |
|---|---|
| beginning May 7, 2008: | 361 Michelson Rd, Houghton Lake |
| October 15, 2007 to May 7, 2008: | 106 Travelo Trail, Houghton Lake |
| September 6, 2007 to October 15, 2007: | 361 Michelson Rd, Houghton Lake |
| June 5, 2000 to September 6, 2007: | 343 3rd, West Branch |

(Doc. 12 at Ex. E.)

### C. Summary Judgment and Qualified Immunity Standards

Defendant raises the defense of qualified immunity. (Doc. 12 at 7-10.) The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative

3

defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

When a defendant moves for summary judgment on the basis of qualified immunity, the analysis involves three inquiries: (1) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (2) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known"; and (3) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).

In deciding qualified immunity questions, courts were for some years required to address these inquiries in sequential order. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005); and *Klein v. Long*, 275 F.3d 544 (6th Cir. 2001) (both citing *Saucier*, 533 U.S. at 201). However, the sequential approach is no longer mandated; judges are now permitted to use their sound discretion in deciding which of the prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

The Supreme Court has also clarified the interplay between qualified immunity and the summary judgment standards found in Rule 56(c) of the Federal Rules of Civil Procedure:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of the events is so utterly discredited by the record that no reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (citations omitted).

Once the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). The court must only consider the facts known to the officers at the time the conduct was undertaken. *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005).

**D.     Analysis and Conclusions**

**1.     Whether a constitutional violation occurred**

The Fourth Amendment of the U.S. Constitution requires that an arrest be supported by probable cause. U.S. CONST. Amend IV; *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001). "[P]robable cause means something 'less than evidence that would justify . . . conviction,' but 'more than bare suspicion.'" *Greene v. Reeves*, 80 F.3d 1101, 1105 (6th Cir. 1996) (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)). Probable cause exists if there are "facts and circumstances within the officer's knowledge that are sufficient

5

to warrant a prudent person, or one of reasonable caution, in believing in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979). When a court is called upon to make a determination as to whether an arrest was supported by probable cause, the arresting officer's subjective knowledge of the facts are the only facts to be considered, even if it is now known that some of the officer's beliefs were in fact mistaken. *Klein*, 275 F.3d at 549-50.

"[I]ssuance of a warrant is not an automatic shield from liability but is 'only one factor [used] in applying the test of "reasonable professional judgment" to the officer's conduct.'" *Armstrong v. City of Melvindale*, 432 F.3d 695, 701 (6th Cir. 2006) (quoting *Greene,* 80 F.3d at 1107)). Stated differently, "[s]tate officers . . . are entitled to rely on a judicially secured warrant unless the warrant was so lacking in indicia of probable cause that existence of probable cause was unreasonable." *BPNC, Inc. v. Taft*, 147 Fed. Appx. 525, 530 (6th Cir. 2005) (finding no constitutional violation where the plaintiff failed to identify any statements in the affidavit that were false and failed to identify which officers stated a deliberate falsehood or showed a reckless disregard for the truth).

An officer cannot rely on the judicial determination of probable cause if he knowingly makes false statements or omissions in his affidavit that are necessary to the finding of probable cause. *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989). "Reckless disregard for the truth in the submission of a warrant application may be established where an officer 'in fact entertained serious doubts as to the truth of the allegations' or where 'circumstances evinc[ed] obvious reasons to doubt the veracity of the allegations' in the application." *Burke*, 405 F.3d at 81 (quoting *United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002)). The Sixth Circuit has stated, albeit in an unpublished decision, that in order to show a reckless disregard for the truth, there

"'must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth [of the statements].'" *United States v. Cican*, 63 Fed. App'x 832, 835 (6th Cir. 2003) (declining to adopt an objective standard) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (1968), and citing *Beard, supra*).

In the instant case, Plaintiff contends that the "information contained in Chief Rodger William's police report . . . was made with a reckless disregards of its truthfulness [because] [his] mother never stated that [he] lived with [his] girlfriend in West Branch, MI, 343 S. 3rd St." (Doc. 14 at 3.) Instead, Plaintiff asserts that his "mother stated that he had a girlfriend that lived somewhere in West Branch, MI and that she didn't know the address but that he could probably be found visiting with her." (Doc. 14 at 3 (emphasis in original).)

Plaintiff alleges that Defendant Williams falsified a document that was sent to the prosecutor's office in pursuit of a warrant for Plaintiff's failure to comply with SORA. (Doc. 14 at 23; Doc. 12 at Ex. C.) I will analyze each statement included in the document in turn.

Defendant stated that the "I/O was advised by witness Denise Showalter that the suspect . . . is a registered sex offender [and] [s]he inquired why he would be registered at a Houghton Lake address when he has lived at this [West Branch] location for years." (Doc. 14 at 23; Doc. 12 at Ex. C.) There is no evidence proffered by Plaintiff that contradicts this statement and I note that it accords with a statement made on July 24, 2008, by Denise Showalter in her Personal Protection Petition where she contends that "[t]he truth be told [Plaintiff] lives across the street [in West Branch] but it is his word against mine. He is registered at 2 addresses now on the PSOR, here and Houghton Lake which I truly do not understand. When I ask the police I am told the secondary address means nothing but yet it is still showing and not only once but twice." (Doc. 14 at 19.)

Defendant next stated that the "I/O ran the suspect through the LEIN and it showed that he is a registered sex offender and that he had just verified his address on 4-14-08. The address that he verified was 361 Michelson Rd, Houghton Lake, MI 48629." (Doc. 14 at 23; Doc. 12 at Ex. C.) That statement is confirmed by the LEIN produced by Defendant. (Doc. 12 at Ex. A.)

Defendant next stated that "Deputy Michael Richardson talked with the suspect's mother, Beverly Foster, at that location [and] [s]he advised that the suspect just used that address to receive his mail." (Doc. 14 at 23; Doc. 12 at Ex. C.) This statement accurately describes Deputy Richardson's recitation of the conversation wherein he indicated that when he inquired whether Plaintiff ever comes to her home, Beverly Foster "stated that he has a camper out back, and that he will sleep there every now and then [and she] stated that Lawrence only uses this address as a mailing address." (Doc. 14 at 15, 25; Doc. 12 at Ex. B.)

Defendant further stated that Plaintiff's mother "thought he may be living with his girlfriend, Kelly Searfoss in West Branch." (Doc. 14 at 23; Doc. 12 at Ex. C.) According to Deputy Richardson's report, when asked if Plaintiff's mother knew where Plaintiff lived, she stated "she thought that he had a house on Loxley Rd, but that she didn't know the address, and that he had a girlfriend that lived somewhere in West Branch and that he could probably be found with her." (Doc. 14 at 15, 25; Doc. 12 at Ex. B.) Plaintiff complains that "may be living with" is a false statement because his mother actually said he could "probably be found with" his girlfriend. I suggest that either way, Defendant's statement in the report is neither significantly misleading nor a deliberate falsehood.

In addition, Defendant stated that Plaintiff's mother indicated that Plaintiff "has not lived there since he was a little boy." (Doc. 14 at 23; Doc. 12 at Ex. C.) This statement is consistent with Deputy Richardson's report that when he asked Plaintiff's mother whether Plaintiff lived at her

residence, she responded that "Lawrence was her son, and that he hasn't lived their [sic] sense [sic] he was little." (Doc. 14 at 15, 25; Doc. 12 at Ex. B.)

Finally, Defendant indicated that the investigating officer "made contact with Cynthia Stein who lives on S. 4th Street directly behind 343 S. 3rd Street" and she stated that the suspect [Plaintiff] had been living there for "about 8 years." (*Id.*) I note that Plaintiff has provided no evidence to contradict that statement.

I further note that Plaintiff's mother's letter is not a resounding confirmation of Plaintiff's position. Beverly Foster's letter states that Plaintiff lived in a camper on her property in September 2007 and "on the first of May, 2008, he started moving in and staying off and on while bringing over what he needed for the work he does for me. He changed his address at the Sec. of State on May 7th 2008. On May the 7th 2008 he was permanently living here." (Doc. 14 at 7, 8.) Her statements suggest that Plaintiff was living with her sporadically, i.e., "off and on," and they do nothing to disprove the allegation that Plaintiff lived in West Branch between October 2007 and May 2008.

I therefore suggest that "the moving party has carried its burden under Rule 56(c)," that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," and therefore "there is no 'genuine issue for trial'" as to whether the arrest warrant was supported by probable cause. *Scott, supra*. I further suggest that Plaintiff has failed to bring forth evidence sufficient to create a genuine dispute over whether Defendant made a deliberate or reckless misstatement or omission that would undermine the existence of probable cause. Even if the statement attributed to Plaintiff's mother that Plaintiff was living with his girlfriend were to be considered false, I suggest that excising that statement would not undermine probable cause. I

9

therefore suggest that Defendant's motion for summary judgment on the federal claims should be granted.

### 2. Other qualified immunity factors

Even if the Court were to find that a genuine issue of disputed material fact existed with regard to whether a constitutional violation occurred, I suggest that (1) the violation did not involve a clearly established constitutional right of which a reasonable person would have known, and (2) Plaintiff has not offered sufficient evidence to indicate that Defendant acted objectively unreasonable in light of the clearly established constitutional rights. *Radvansky, supra.* I therefore suggest that Defendant would nevertheless be entitled to qualified immunity and his motion for summary judgment granted on these alternative bases.

### 3. State law claims

I further suggest that, pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966), this Court should decline to exercise its discretion to entertain the pendent state law claims made against Defendant. *See id.* at 726 (noting that generally "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.")  *See also Hankins v. The Gap, Inc.*, 84 F.3d 797, 802-03 (6th Cir. 1996) (when all federal claims have been dismissed at a pretrial stage and the parties are non-diverse, the district court should decline to exercise supplemental jurisdiction over the surviving state law claims).

### 4. Conclusion

For all the reasons stated above, I recommend that Defendant's motion for summary judgment be granted and that the case be dismissed in its entirety.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." FED. R. CIV. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

                                      s/ *Charles E. Binder*
                                      CHARLES E. BINDER
Dated: March 1, 2011                United States Magistrate Judge

### **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on all attorneys of record via the Court's CM/ECF system and served on the following non-ECF participant via the United States Postal Service: Lawrence Dale Foster, 343 S.Third St., West Branch, MI, 48661-1333.

Date:  March 1, 2011                By     s/*Patricia T. Morris*
                                              Law clerk to Magistrate Judge Binder